Frank SHOUREK, in his capacity as successor administrator of the Estate of Lillian Jonas, Deceased, Appellant–Plaintiff,

v.

Suzanne M. STIRLING and Jack Stirling, Appellees–Defendants.

No. 37A05–9207–CV–255.

Court of Appeals of Indiana, Fifth District.

Feb. 8, 1993.

Richard J. Rupcich, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellant-plaintiff.

Lewis D. Dellinger, Jr., Dellinger, Dellinger & Smith, Monticello, for appellees-defendants.

BARTEAU, Judge.

Frank Shourek, in his capacity as administrator of the estate of Lillian Jonas ("Estate"), appeals the grant of summary judgment in favor of Suzanne and Jack Stirling on the Estate's claim of conversion. The Estate alleges Suzanne converted approximately $65,000 from bank accounts which Jonas and Suzanne owned as joint tenants. On cross-motions for summary judgment, the trial court granted summary judgment in favor of Stirlings. The Estate appeals, arguing that the trial court incorrectly applied Indiana law.

We affirm.

## FACTS

Shortly after her husband died, Lillian Jonas added the name of Suzanne Stirling, her late husband's niece, on several of her bank accounts, including a checking account and four certificates of deposit. Jonas contributed all the funds in these accounts. (R. 165–66).

On February 28, 1991, Jonas was found unconscious in her home and was transported to the White County Hospital. She did not regain consciousness and died in the afternoon on March 2, 1991. A few hours before Jonas' death, Suzanne closed the checking account, worth about $25,000

and cashed the certificates of deposit, worth about $40,000.

Suzanne and her husband Jack made all of the arrangements for Jonas' funeral and were unaware of any surviving children until after Jonas' death. Jack Stirling was appointed administrator of Jonas' estate. However, upon learning that Jonas had surviving blood relatives, Jack voluntarily withdrew and Frank Shourek, Jonas' son, was named as successor administrator.

## DISCUSSION

Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Marathon Petroleum Co. v. Colonial Motel Properties, Inc.* (1990), Ind.App., 550 N.E.2d 778. When reviewing a grant of summary judgment, we apply the same standard as the trial court, and examine all pleadings, admissions, answers to interrogatories, depositions, and affidavits filed with the court in the light most favorable to the party opposing the summary judgment motion. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305. Any doubt as to a fact, or an inference to be drawn, is resolved in favor of the nonmoving party. *Marathon,* 550 N.E.2d at 1323. Further, summary judgment will not be reversed on the ground that there is a genuine issue of material fact unless the material fact and the evidence relevant thereto have been specifically designated to the trial court. T.R. 56(H).

The trial court entered findings and conclusions of law to support its grant of summary judgment. Specific findings and conclusions are not required by T.R. 56, but neither are they prohibited. *P.M.S. v. Jakubowski* (1992), Ind.App., 585 N.E.2d 1380, 1381, n. 1. Normally, the requested entry of specific findings and conclusions triggers the appellate standard of review urged by the Estate and contained in T.R. 52, which permits us to reverse the trial court's judgment only if the findings or conclusions are clearly erroneous. However, T.R. 52 governs only those cases which proceed to trial. On the other hand, we will affirm a grant of summary judgment on any legal theory supported by the record and this standard of review is not affected by the entry of specific findings and conclusions. *Id.* The entry of findings and conclusions serves only to aid our review by providing us with a statement of reasons for the trial court's actions. *Id.*

Summary judgment was properly granted because Jonas' estate has no standing to pursue this conversion action. In order to maintain an action for conversion, the plaintiff must prove an immediate, unqualified right to possession resting on a superior claim of title. *Yoder Feed Serv. v. Allied Pullets, Inc.,* (1977), 171 Ind.App. 692, 359 N.E.2d 602. Thus, a conversion action may only be maintained by the party having a right to the property allegedly converted. However, the Estate has no right to possession of the accounts.

During the lifetime of all parties to a joint account, the account belongs to the parties in proportion to their net contributions, unless there is clear evidence of a different intent. Ind.Code 32–4–1.5–3. When one party dies, however, the sums remaining on deposit belong to the surviving party. I.C. 32–4–1.5–4. A transfer that occurs through operation of I.C. 32–4–1.5–4 is not subject to probate administration. I.C. 32–4–1.5–6.

It is undisputed that Jonas was the sole contributor to the funds in the account and Stirlings do not argue that Jonas intended to make an *inter vivos* gift of the accounts to Suzanne. Therefore, the accounts belonged to Jonas while she was alive, and had she survived, she could have maintained a conversion action against Stirling had she so desired. *See, e.g., Rogers v. Rogers* (1982), Ind.App., 437 N.E.2d 92. When Jonas died, however, her interest in the accounts died with her. The accounts now belong to Suzanne as the surviving joint owner. The Estate has no claim of title to the accounts and may not maintain a conversion action for return of the funds.

The Estate admits that Suzanne had the authority to withdraw the funds from the account, but argues that by with-

drawing the funds before Jonas' death she severed her rights of survivorship. However, under the circumstances presented in this case, it makes no difference that Suzanne withdrew the money before Jonas' death.

■ We also note that this action does not come within I.C. 32–4–1.5–7, which provides in relevant part as follows:

No multiple-party account is effective against an estate of a deceased party to transfer to a survivor sums needed to pay claims, taxes, and expenses of administration, including the statutory allowance to the surviving spouse or dependent children, if other assets of the estate are insufficient. A surviving party, P.O.D. payee, or beneficiary who receives payment from a multiple-party account after the death of a deceased party shall be liable to account to the personal representative for amounts the decedent owned beneficially immediately before his death to the extent necessary to discharge the claims and charges mentioned above remaining unpaid after application of the decedents estate.... No proceeding to assert this liability shall be commenced unless the personal representative has received a written demand by a surviving spouse, a creditor or one acting for a dependent child of the decedent, and no proceeding shall be commenced later than one (1) year following the death of the decedent....

There is no evidence that written demands have been made on the Estate by a surviving spouse, surviving children, or a creditor.

The grant of summary judgment in favor of Stirlings is hereby AFFIRMED.

SHARPNACK, C.J., concurs.

STATON, J., dissents with opinion.

STATON, Judge, dissenting.

I dissent because the statutes demand it. The trial court found that just four hours before the death of Lillian Jonas, Suzanne Stirling withdrew sixty-five thousand dollars ($65,000.00) from joint accounts that she held with Jonas. Additionally, the trial court found "[t]hat Suzanne Stirling made no contributions to these accounts." Record p. 382. Ind.Code 32–4–1.5–3(a) (1988) provides:

A joint account belongs, during the *lifetime* of all parties, to the parties in proportion to the net contributions by each to the sums on deposit, unless there is clear and convincing evidence of a different intent. (Emphasis added.)

Because closing the accounts during Jonas' lifetime closed the statutory survivorship umbrella—only Jonas' unsheltered ownership contribution interests remained. For the Stirlings to prevail, the accounts must exist at the time Jonas died. IC 32–4–1.5–4(a) (1988) provides:

Sums *remaining on deposit at the death of a party* to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created. (Emphasis added.)

When Suzanne Stirling closed the accounts and withdrew the sums of money in the accounts, she also withdrew the survivorship protection of the statute. Indeed, she had a right to withdraw the sums of money and to possess the sums of money withdrawn during Lillian Jonas' lifetime; however, the ownership of the withdrawn sums of money remained with Jonas during her lifetime. When Jonas died, the ownership passed to her estate. This is so because IC 32–4–1.5–3(a) provides that during Jonas' lifetime as the sole contributor she is the owner. Because Suzanne Stirling closed the accounts and they no longer exist for the application of IC 32–4–1.5–4(a), the sums of money held by Suzanne Stirling but owned by Jonas must be turned over to Jonas' estate.

The trial court ignored the fact that no sums were on deposit in any account at the death of Jonas. The trial court ignored Jonas' ownership of the withdrawn funds during her lifetime. Under the statutes of

Indiana, Jonas' estate has standing. While Suzanne Stirling and her husband, Jack Stirling, may have a claim against Jonas' estate for services, they do not possess any ownership rights to the sums withdrawn from the accounts before Jonas' death.

Therefore, I would reverse the trial court granting of summary judgment.