**Frank SHOUREK, in his capacity as Successor Administrator of the Estate of Lillian Jonas, Deceased, Appellant, (Plaintiff Below)**

**v.**

**Suzanne M. STIRLING and Jack Stirling, Appellee. (Defendant Below)**

No. 37S05–9310–CV–1149.

Supreme Court of Indiana.

Oct. 22, 1993.

Richard J. Rupcich, Blachly Tabor Bozik & Hartman, Valparaiso, for appellant.

Lewis D. Dellinger, Jr., Dellinger Dellinger & Smith, Monticello, for appellee.

ON PETITION TO TRANSFER

KRAHULIK, Justice.

Frank Shourek (Plaintiff–Appellant below), in his capacity as administrator of the estate of Lillian Jonas ("Estate"), seeks transfer after the Court of Appeals affirmed the summary judgment granted in favor of Suzanne and Jack Stirling (Defendants–Appellees below) on the Estate's claim of conversion. *Shourek v. Stirling* (1993), Ind.App., 607 N.E.2d 402.

The pertinent facts of this case are not in dispute. Shortly after the death of her husband, Lillian Jonas added the name of her late husband's niece, Suzanne Stirling, to a checking account and four certificates of deposit ("CD's"). These transactions took place between April and July of 1990. Bank employees explained to Jonas the different types of ownership available; she chose joint ownership with rights of survivorship and an unrestricted right of withdrawal by either joint tenant.[1] Suzanne made no contribution to the accounts or the CD's.

Jonas was found unconscious in her home on February 28, 1991, and was transported to White County Memorial Hospital

where she remained in a coma until her death. Jonas' attending physician advised the Stirlings that Jonas had little chance of survival and that, if she did survive, she would likely be placed in a nursing home. On March 2, 1991, approximately four hours before Jonas died, the Stirlings withdrew approximately $65,000 from some of the joint accounts.

Jonas died intestate. As Jonas had requested, the Stirlings made the funeral arrangements and paid for them the day of the funeral. Jack Stirling was appointed administrator of the Estate and he filed the inventory of the Estate which included each joint account and CD. However, upon learning Jonas had a surviving blood relative, he voluntarily withdrew and Shourek, a nephew of Jonas, was appointed successor administrator of the Estate.

Shourek brought suit against the Stirlings alleging that they had converted the funds withdrawn from the joint accounts. Cross-motions for summary judgment were filed. The trial court determined that Jonas intended that Suzanne Stirling receive the proceeds of the accounts and that, unless there is clear and convincing evidence of a contrary intent, the owner's wishes are paramount to other considerations and granted summary judgment in favor of the Stirlings.

Shourek appealed. The Court of Appeals, in affirming the trial court's grant of summary judgment, determined that Shourek lacked standing because Jonas' interest in the account died with her. We grant transfer to address two issues, *viz.* (1) whether the Estate had standing to pursue the withdrawn funds, and (2) whether the withdrawal constituted conversion.

### *Standing*

Shourek asserts that the Court of Appeals incorrectly determined that, as administrator, he did not have standing to bring the action. Shourek argues that *Ind. Code* § 29–1–13–3 empowers the Estate to

---

1. This type of account allows either party to the joint account to withdraw funds from the account without the signature of the other party.

step into the shoes of Jonas and bring an action that Jonas could have brought had Jonas survived.[2] Shourek asserts that Jonas, as sole contributor to the account, could have demanded the return of the funds of the joint accounts and, consequently, the Estate, in her absence, may pursue the claim.

■ Standing is a judicial doctrine which focuses on whether the complaining party is the proper party to invoke the court's jurisdiction. *Schloss v. City of Indianapolis* (1990), Ind., 553 N.E.2d 1204, 1206. The plaintiff "must demonstrate a personal stake in the outcome of the lawsuit and must show that he or she has sustained or was in immediate danger of sustaining, some direct injury as a result of the conduct at issue." *Higgins v. Hale* (1985), Ind., 476 N.E.2d 95, 101. Jonas had a personal stake in the outcome of the case because she was the sole contributor of the funds in the joint accounts. The action for conversion alleges that Jonas lost use of the funds in the joint accounts thus suffering a direct injury. Shourek, in the action for conversion, attempts to assert Jonas' right to ownership of the joint accounts. *Ind.Code* § 29–1–13–1 permits Shourek to bring an action for the decedent. As a result, because Jonas may have been able to establish an action for return of the joint account proceeds had she survived, Shourek correctly asserts that the Estate has standing to bring the action.

### Conversion

■ In order to maintain an action for conversion, the plaintiff must establish the appropriation of personal property by another for that party's own use and benefit in exclusion and defiance of the owner's rights. The essential elements of the plaintiff's claim are an immediate, unqualified right to possession resting on a superior claim of title. *Yoder Feed Serv. v. Allied Pullets* (1977), 171 Ind.App. 692, 695, 359 N.E.2d 602, 605.

**2.** *Ind.Code Ann.* § 29–1–13–3 (West 1979) provides that the "personal representative shall have full power to maintain any suit in any court of competent jurisdiction ... for any de-

■ Shourek's conversion argument contains a series of building blocks composed of the interplay of two statutes and the actions of the Stirlings. He begins with the premise that, as the sole contributor, Jonas owned all of the funds in the accounts until the moment she died. Shourek continues with the notion that the withdrawal of the funds from the accounts before Jonas' death severed the joint tenancy and removed the protection of the presumption of survivorship. Thus, asserts Shourek, this sequence of events gives rise to the action for conversion.

In response, the Stirlings assert that the Estate failed to establish by clear and convincing evidence that, at the time the account was created, Jonas did not intend Stirling to receive the funds upon Jonas' death. The Stirlings assert that the evidence supports a finding that Jonas' intent was to convey a gift of present interest to Suzanne subject only to Suzanne's keeping funds available for Jonas' immediate needs.

The Estate does not dispute that Suzanne had the right to withdraw funds from the account, but does dispute the effect of the withdrawal on the parties' rights to the proceeds of the accounts. There are two statutes which address the ownership of joint accounts. First, ownership of the proceeds of a joint account is addressed in *Ind.Code Ann.* § 32–4–1.5–3(a) (West 1979) which states: "A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contribution by each to the sums on deposit, unless there is clear and convincing evidence of a different intent." In developing the Non-Probate Transfers Act, the Indiana Probate Code Study Commission recognized

the assumption that a person who deposits funds in a multiple-party account normally does not intend to make an irrevocable gift of all or any part of the funds represented by the deposit. Rather, he usually intends no present change of beneficial ownership.... It is important

mand of whatever nature due the decedent or his estate or for the recovery of possession of any property of the estate...."

to note that the section is limited to describe ownership of an account while original parties are alive.... Presumably, overwithdrawal leaves the party making the excessive withdrawal liable to the beneficial owner as a debtor or a trustee. Of course, evidence of intention by one to make a gift to the other of any sums withdrawn by the other in excess of his ownership could be effective.

Unif.Probate Code § 6–103, 8 U.L.A. (1983) (quoted by Indiana Probate Code Study Commission in commentary following *Ind. Code* § 32–4–1.5–3). This statute creates the presumption that the proceeds in a joint account belong to the joint tenants in the proportion that they contributed to the account while they were alive. Here, it is undisputed that Lillian Jonas made all contributions to the joint accounts. As a result, the proceeds in the accounts presumptively belonged to Jonas during her lifetime unless clear and convincing evidence of a contrary intent is established.

The second statute which addresses the ownership of joint accounts is *Ind. Code* § 32–4–1.5–4(a), which provides, "[s]ums remaining on deposit at the death of a party to a joint account belong to the surviving party or parties as against the estate of the decedent unless there is clear and convincing evidence of a different intention at the time the account is created." Thus, the proceeds in the accounts that remained on deposit at the death of Jonas presumptively belong to the Stirlings unless clear and convincing evidence of a contrary intent is established.[3] Shourek argues that the withdrawal of the proceeds severed the joint tenancy, thereby eliminating the effect of this presumption.

■ As stated, *Ind. Code* § 32–4–1.5–4(a) creates a presumption that the funds in a joint account will belong to the survivor at the death of a joint owner. Therefore, in order for the Stirlings to benefit from this statutory presumption, the funds must have remained on deposit when Jonas died. The facts here establish that the funds were withdrawn prior to her death. Conse-

quently, the presumption of survivorship does not come into play and the Stirlings must establish their entitlement to ownership without the benefit of such presumption.

Having determined that the Stirlings find no solace in the presumption of survivorship, we must examine the nature of the Stirlings' ownership rights to the accounts during the lifetime of the parties. Stirlings assert Jonas' intent to transfer a present interest in the joint accounts is evidenced by the authority given to Suzanne to make withdrawals. The right to withdraw and the right of ownership, however, are separate and distinct rights. The deposit agreements establish a party's right to withdraw funds and govern the relationship between the bank and the joint tenants. Although the deposit agreements clearly gave Suzanne the right to withdraw funds from the account, the deposit agreements alone do not create an ownership right in the funds that were withdrawn.

In addition to the right to withdraw funds, however, evidence was presented that the Stirlings were given physical possession of some of the CD's and that the Stirlings were given a key to Jonas' home with instructions as to where to find the passbooks for the remaining joint accounts. These facts, when combined with the above-discussed right of withdrawal, are evidence of Jonas' intent to make a present gift subject only to funds being available for Jonas' immediate needs. If a gift were completed, then the funds belonged to the Stirlings at the time of their withdrawal. The factual findings of the trial court did not consider this evidence or determine this issue. As a court of review, we may not usurp the trial court's function of making factual findings and determinations. Consequently, we must remand the case to the trial court to weigh evidence and determine whether an inter vivos gift occurred.

### *Conclusion*

Accordingly, we grant transfer, vacate the opinion of the Court of Appeals, re-

---

**3.** Both parties agree that had the Stirlings waited until the death of Jonas to close the accounts, the proceeds of the joint accounts would presumptively belong to the Stirlings.

verse the trial court's grant of summary judgment in favor of the Stirlings, and remand the case to the trial court for further proceedings consistent with this opinion.

SHEPARD, C.J., and DeBRULER, GIVAN and DICKSON, JJ., concur.