SOUTH BEND TRIBUNE, WSBT–TV, WSBT–Radio, Elkart Truth, and WTRC, Appellants–Intervenors,

v.

ELKHART CIRCUIT COURT and the Honorable Gene R. Duffin, Appellees.

No. 20A03–9709–CR–339.

Court of Appeals of Indiana.

Jan. 16, 1998.

Transfer Denied April 15, 1998.

Gerald F. Lutkus, George E. Horn, Jr., Barnes & Thornburg, South Bend, for Appellants–Intervenors.

Jeffrey A. Modisett, Attorney General, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, for Appellees.

## OPINION

GARRARD, Judge.

The South Bend Tribune, WSBT–TV, WSBT–Radio, the Elkhart Truth, and WTRC (collectively "Media") appeal the trial court's denial of its motion to quash the gag

order placed on the trial participants in a local murder trial, claiming the gag order was an impermissible prior restraint upon their First Amendment rights.

We affirm.

## FACTS

The gag order at issue here was initially issued on July 16, 1997 by Judge Gene Duffin to prevent the participants in the murder retrial[1] of Ricky Joyner ("Joyner") from speaking with the media.[2] Shortly after Judge Duffin entered the gag order, the Media filed a motion to intervene and to quash the gag order. The trial court granted the motion to intervene and, on July 30, 1997, held oral argument.[3] After the oral argument, the trial court asked the Media to supply it with copies of newspaper articles concerning the Joyner trial and articles from previous murder trials.

After reviewing the articles submitted by the Media, the trial court issued an order denying the motion to quash and affirming the gag order on August 11, 1997. In its order, the trial court first stated that the Media had the right to intervene in the present case and then stated that the gag order was justified by the pretrial publicity's threat to Joyner's Sixth Amendment right to a fair trial. The trial court then discussed each of the alternatives to the gag order suggested by the Media and found that the alternatives were either not justified or ineffective. Finally, the trial court further defined the restricted parties and clarified what they were prohibited from discussing. Eight days later, the Media filed a request for leave to file an interlocutory appeal which the trial court granted. On October 8, 1997, we granted the Media's petition for interlocutory appeal.

1. Joyner was initially convicted of Sandra Hernandez's murder in 1994 and sentenced to sixty years in prison. In *Joyner v. State*, 678 N.E.2d 386 (Ind.1997), our supreme court reversed Joyner's conviction and remanded for a new trial. The present appeal concerns this second trial.

2. The trial participants were prohibited from speaking with all members of the media whether newspaper, radio, or TV. The gag order did not single out the appellants in this appeal as the only media with whom the trial participants were forbidden to discuss the case.

## ISSUES

The Media raises two issues on appeal which we restate as:

I.   Whether the gag order constituted an impermissible prior restraint upon the Media's First Amendment rights.

II.  Whether the trial court's order was justified in light of the surrounding facts.

## DISCUSSION

In its first claim, the Media argues that the gag order placed upon the trial participants constitutes a prior restraint upon the Media because it was intended to "quiet the media" and prevents them from effectively reporting the murder trial. The State[4] contends that the gag order is not a prior restraint because it does not apply to the Media and does not prevent them from covering the trial. We agree.

Based upon our research and the admission of the parties, the question of whether a gag order placed upon the participants in a criminal trial constitutes a prior restraint upon the press appears to be a question of first impression in Indiana. In its order of August 11, 1997, the trial court relied upon *Application of Dow Jones & Co., Inc.*, 842 F.2d 603 (2nd Cir.1988) *cert. denied,* 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988) for its determination that its gag order did not constitute a prior restraint. The State argues that the trial court properly relied upon *Dow Jones* to determine that the gag order is not a prior restraint. Admitting that the gag order is not a "classic" prior restraint, the Media nonetheless contends that the gag order was intended to muzzle

3. The order allowing intervention is unchallenged and confers standing. We express no opinion as to whether the Media generally has sufficient standing to make a challenge such as this.

4. The State represents the named defendants, the Elkhart County Circuit Court and Judge Gene Duffin.

the media[5] and is, therefore, a prior restraint. In addition, the Media argues that *Dow Jones* is factually distinguishable because it involved much more pervasive and prejudicial pretrial publicity than exists in the present situation. The Media claims that the trial court should have relied upon *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) to find the order a prior restraint upon its First Amendment rights.[6]

◼ In *Nebraska Press*, the trial court issued a gag order *against* the media restraining them from publishing certain facts about a highly publicized murder trial. We are not presented here with a gag order entered against the media, instead the gag order is directed at the trial participants. We find *Nebraska Press* to be factually distinguishable. Unlike *Nebraska Press*, the gag order in *Dow Jones* is strikingly similar to the order in the present case. In *Dow Jones*, the trial court issued a gag order that restrained the trial participants from speaking with the media about the case. Like the Media in the present case, the media in *Dow Jones* challenged the gag order claiming that it constituted a prior restraint upon their First Amendment rights. The *Dow Jones* court initially noted that the gag order was not directed at the media, but was instead directed at the trial participants. The court found this distinction to be critical, *Dow Jones*, 842 F.2d at 608, and held that the gag order could not be characterized as a prior restraint upon the media. *Id.* at 609. The Media contends that *Dow Jones* is factually

distinguishable because the pretrial publicity at issue here was much less pervasive and prejudicial than in *Dow Jones*. We fail to see how the amount and type of publicity changes the holding that a gag order on trial participants does not constitute a prior restraint upon the press. The Media's argument that the publicity in *Dow Jones* was greater goes to whether the gag order is justified, not whether it is a prior restraint. The Media is not prevented from covering the trial by this gag order. The only parties prevented from speaking are the trial participants and they are not parties to this appeal. We agree with *Dow Jones* and hold that a gag order placed solely upon trial participants does not constitute a prior restraint upon the press.

◼ We now turn to the test used by the *Dow Jones* court to determine whether the trial court was justified in issuing the gag order.[7] "To decide whether the pretrial publicity justified the order, the standard by which to measure justification is whether there is a 'reasonable likelihood' that pretrial publicity will prejudice a fair trial." *Id.* at 610. The trial court must examine the nature and extent of the pretrial publicity to determine whether this reasonable likelihood standard has been met. *Id.* Before a trial court may enter an injunction against speech, the trial court must decide whether alternative means would effectively mitigate the prejudicial effect of the pretrial publicity. *Id.* at 611. These alternative means must be examined individually and collectively. *Id.*

---

**5.** The Media relies heavily on a statement made by the trial court while discussing the initial gag order in court with the parties. We note that in the trial court's more detailed order of August 11th, the trial court stated: "The goal of this Court is not to limit the rights of the media in any manner." Record at 280. The trial court went on to state that its sole purpose was to insure a fair and impartial trial.

**6.** We note that the Media claims that the gag order violated both their First Amendment rights under the United States Constitution and their rights under Article 1, § 9 of the Indiana Constitution. As the State correctly points out, the Media does not provide any separate argument concerning Article 1, § 9 of the Indiana Constitution and fails to cite any authority concerning Article 1, § 9. The Media contends that the lack

of Indiana authority on challenges of this sort prevents them from citing any Indiana authority. Regardless of the lack of authority directly on point, the Media has failed to make any separate argument on its Indiana Constitutional claim and has failed to cite any Indiana authority concerning Article 1, § 9. Due to this lack of cogent argument and citation to authority, the Media has waived their Indiana constitutional claim. *Smith v. State*, 586 N.E.2d 890, 895 (Ind.Ct.App. 1992); Ind.Appellate Rule 8.3(A)(7).

**7.** The Media argues that we should use the test in *Nebraska Press*. This argument is premised upon a finding that the gag order constituted a prior restraint. Because we find that the gag order was not a prior restraint upon the Media, the *Nebraska Press* test is not applicable.

In its second claim, the Media does not directly discuss the *Dow Jones* test, but instead claims that the trial court's order was vague, ambiguous, and overly broad. The Media argues that the gag order is vague and ambiguous because it is not clear which parties may not speak with the media. The Media claims the order is overly broad because it covers more people than is necessary to insure a fair trial. These claims all revolve around the premise that the gag order applies to the Media and is a prior restraint upon the Media. As we have discussed, the gag order is not a prior restraint upon the Media and does not apply to the Media. The Media may speak with anyone it so desires. It is the restrained parties who may not speak about the subjects defined in the order.[8] In this instance, the only parties who may challenge the terms of the restraining order as they are applied are the restrained parties. Because the Media is not one of the restrained parties, the Media may not now challenge the order as it is applied. We will, therefore, treat the Media's second claim as challenging whether the facts justified the gag order under the reasonable likelihood test in *Dow Jones*.

■ We initially note that we review the trial court's factual determinations for an abuse of discretion. *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind.1993); *Dow Jones*, 842 F.2d at 611. In its order, the trial court stated that it had reviewed 25 articles concerning the trial published in the two newspapers challenging the order since April 1997, as well as articles from prior murder trials. The Media does not deny the existence of these articles, but instead argues that the articles were not sufficient to show a reasonable likelihood that the publicity would prejudice the trial. We note that the trial court was in the best position to judge the prejudicial effect the publicity would have on the trial. From our review of the record, we cannot say that the trial court abused its discretion when it found that there was a reasonable likelihood that the pretrial publicity would prejudice the trial.

■ Finally, the Media contends that the trial court should have used a variety of alternative means instead of the gag order. Under the *Dow Jones* test, the trial court was required to determine whether alternative means would effectively mitigate the prejudicial effect of the publicity. *Dow Jones*, 842 F.2d at 611. In its order, the trial court discussed the possibility of a change of venue, postponement of the trial, sequestration of the jury, extensive voir dire, and forceful jury instructions. The trial court analyzed the appropriateness of each alternative and found that they would not effectively mitigate the prejudicial effect of the pretrial publicity. By analyzing each of the alternative remedies proposed by the Media and determining that they would not be effective before issuing the gag order, the trial court correctly followed the *Dow Jones* test. We hold that the trial court did not abuse its discretion by determining that there was a reasonable likelihood that the pretrial publicity would prejudice the trial and that the only effective remedy was an order restraining the parties from discussing the case with the media. The trial court's denial of the Media's motion to quash and clarification of the gag order is affirmed.

Affirmed.

BARTEAU and DARDEN, JJ., concur.

---

8. We commend the trial court for specifically listing in its order the five topics the parties are restrained from discussing with the media. We believe that, when possible, trial courts should specifically delineate the topics forbidden by their gag orders as the trial court did here.