Tony T. BOGETTI, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 30A01–9906–CR–194.

Court of Appeals of Indiana.

Feb. 3, 2000.

Thomas N. Leslie, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Arthur Thaddeus Perry, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BAKER, Judge

Today we consider whether information reported directly to a police officer by a concerned citizen that a driver "may be intoxicated" sufficiently rises to the level of a reasonable suspicion warranting an initial stop of the driver. Appellant-defendant Tony T. Bogetti appeals his conviction for Operating a Motor Vehicle with a Blood Alcohol Content of at least .10 percent,[1] a Class C misdemeanor, claiming that the trial court erred in denying his motion to suppress and that the evidence was insufficient to support the conviction.

### FACTS

The facts most favorable to the judgment are that on February 8, 1998, at approximately 10:50 p.m., Greenfield police officer John Jester and several fellow officers were dining at a McDonald's restaurant. At some point during the meal, a man approached Officer Jester and informed him that another individual, later identified as Bogetti, who had just exited the restaurant and drove away in a white

1. IND. CODE § 9–30–5–1.

semi truck, "may be intoxicated." R. at 84. Immediately thereafter, Officer Jester and another officer left the restaurant and entered their patrol cars. As Officer Jester began to follow the white semi, Bogetti drove the truck into a shopping center parking lot. Officer Jester then activated his emergency lights, whereupon Bogetti continued driving through the lot and made a turn as though he was going to stop. Another officer then pulled his police car in front of the truck.

After Bogetti exited the vehicle, he showed Officer Jester his driver's license as requested. Bogetti was unable to produce the truck registration, however, because he had locked his keys in the cab. The officers smelled alcohol on Bogetti's breath, and Bogetti admitted that he had consumed "a couple beers." R. at 136. Officer Jester then directed Bogetti to perform a number of field sobriety tests which he ultimately failed. Bogetti was arrested and transported to the hospital where his urine and blood were tested. Those tests revealed a blood alcohol content of between .127 and .135 grams of alcohol per deciliter of blood. As a result, Bogetti was charged with driving while intoxicated and driving with a blood alcohol content greater than .10 percent.[2]

Prior to trial, Bogetti moved to suppress all evidence resulting from the stop by the police officers for the reason that there existed no "reasonable suspicion that the defendant was engaged in criminal activity in order to justify the stop." R. at 36. Bogetti's motion was denied, and following a jury trial which commenced on March 9, 1999, Bogetti was found guilty of operating a motor vehicle with a blood alcohol content of .10 percent or more and not guilty of driving while intoxicated. He now appeals.

2. Bogetti was also charged with illegal possession of a police radio and was ultimately acquitted of that offense.

## DISCUSSION AND DECISION

### I. Motion to Suppress

Bogetti first claims that the trial court erred in denying his motion to suppress. Specifically, he contends that the stop was not justified because it was based only upon the tip of an unidentified individual who told the officers that he believed that Bogetti may have been intoxicated.

 To resolve this issue, we initially observe that an investigatory stop of a citizen by a police officer does not violate that individual's constitutional rights where the officer has a reasonable articulable suspicion of criminal activity. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997), *modified on other grounds*, 685 N.E.2d 698 (Ind.1997); *see also Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Such "reasonable suspicion" is determined on a case by case basis, and the totality of the circumstances is considered. *Baran v. State*, 639 N.E.2d 642, 644 (Ind.1994); *Platt v. State*, 589 N.E.2d 222, 226 (Ind.1992). Reasonable suspicion entails some minimum level of objective justification for making a stop; something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Cardwell v. State*, 666 N.E.2d 420, 422 (Ind.Ct. App.1996), *trans. denied*. In judging the reasonableness of investigatory stops, courts must strike a balance between the public interest and the individual's right to personal security free from arbitrary interference by law enforcement officers. *Stalling v. State*, 713 N.E.2d 922, 924 (Ind. Ct.App.1999). There are certainly legitimate State concerns in deterring driving while intoxicated and under-age drinking. *See State v. Garcia*, 500 N.E.2d 158, 161 (Ind.1986), *cert. denied* 481 U.S. 1014, 107 S.Ct. 1889, 95 L.Ed.2d 496.[3]

3. As the *Garcia* court noted, "[t]he average number of deaths per year for the last ten (10) years attributable to drunk drivers in the United States is 25,000. The Supreme Court

Appropriate circumstances are demonstrated justifying a stop when a police officer is able to point to specific and articulable facts which, when considered together with the rational inferences drawn from those facts, create a reasonable suspicion of criminal conduct on the part of a vehicle's occupants. *State v. Nesius*, 548 N.E.2d 1201, 1203 (Ind.Ct. App.1990). A reasonable suspicion justifying a limited investigative stop of a vehicle affords a police officer the right to temporarily "freeze" the situation in order to make investigative inquiry. *State v. Smith*, 638 N.E.2d 1353, 1355 (Ind.Ct.App. 1994). Finally, we note that anonymous or unidentified informants can supply information that gives police reasonable suspicion. A tip will be deemed reliable when an individual provides specific information to police officers such as a vehicle description. *See Lampkins*, 682 N.E.2d at 1271–72 (tip was deemed reliable when police officers were able to identify a vehicle which matched the description that informant had provided to them); *see also Adams v. State*, 542 N.E.2d 1362, 1366 (Ind.Ct.App.1989).

In determining whether Officer Jester could lawfully stop Bogetti under these circumstances, we note that the facts here are strikingly similar to those in *State v. Springmier*, 559 N.E.2d 319 (Ind.Ct. App.1990). In that case, a concerned citizen telephoned the police department regarding a driver who was operating his vehicle erratically on a city street. In response to that report, the police dispatcher informed a deputy sheriff of a possible drunk driver and relayed a description of the vehicle and direction of travel. *Id.* at 320–21. The officer saw the vehicle, stopped the defendant and ultimately arrested him for driving while intoxicated. *Id.* at 321. In determining that the trial court erred in granting the defendant's motion to suppress, this court observed that "[t]he information [the deputy] received from the dispatcher provided [the deputy] with reasonable suspicion based upon specific and articulable facts that the Defendant may have been committing a crime. . . ." *Id.*

As in *Springmier*, the report received by the police officers from the citizen at McDonald's contained specific information regarding the vehicle that Bogetti was driving. The officers then were able to verify the correctness of this information in light of their immediate response to the report. While Officer Jester did not pause and question the concerned citizen in order to test or verify the accuracy of the report, the circumstances warranting an immediate response are readily apparent here. Moreover, Bogetti makes no claim that he was acquainted with the individual who reported the incident and there is no evidence to suggest that the citizen concocted a false report, told some "tall tale" of Bogetti's suspected intoxication or otherwise acted in a manner which might have placed the citizen's motive or credibility at issue. As a result, the facts presented here and the reasonable inferences arising from those facts would cause an ordinarily prudent person to believe that criminal activity had or was about to occur. The justifications for stopping Bogetti's truck were specific and articulable and we cannot say that Officer Jester's actions were made on a mere hunch. Moreover, the facts possessed by the Officers gave rise to the reasonable suspicion that the truck was being operated by an impaired driver and were sufficient to sustain the legality of the investigatory stop. *See Smith*, 638 N.E.2d at 1356. Thus, the stop was reasonable and the trial court did not err in denying Bogetti's motion to suppress. *See Lampkins*, 682 N.E.2d at 1271–72; *Springmier*, 559 N.E.2d at 321.

of the United States has recognized that the current state of affairs has resulted in such terrible carnage wreaked upon society by drunk drivers that the slaughter exceeds that of all our wars." *Garcia*, 500 N.E.2d at 161, citing *South Dakota v. Neville*, 459 U.S. 553, 103 S.Ct. 916, 74 L.Ed.2d 748 (1983).

We note, however, that where the circumstances permit, an officer should obtain the name, address and phone number of an informant. Here, in a McDonald's restaurant, the opportunity existed to not only obtain identification information but to inquire about the basis of the informant's determination of Bogetti's condition. Otherwise, the reasonableness of the officer's investigative stop loses its luster and credibility. On the other hand, when an officer receives a dispatcher's message, he has no reason to question the source or credibility. Too, the circumstances suggest urgency and a need for immediate action on the part of the officer. Reasonableness of the investigative stop should be given the utmost scrutiny by the trial court.

## II. Sufficiency of the Evidence

■ Bogetti next claims that the evidence was insufficient to support his conviction. Specifically, he contends that the evidence showed that his blood alcohol content was 159 milligrams of alcohol per "decaliter" of blood, which is considerably less than that which is prohibited under I.C. § 9–30–5–1. Appellant's brief at 13.

To resolve this issue, we initially observe that I.C. § 9–30–5–1(a)(1) provides that a person commits a Class C misdemeanor if he "operates a vehicle with at least ten-hundredths percent (0.10%) of alcohol by weight in grams in: (1) one hundred (100) milliliters of the person's blood . . . ."[4] In light of this statutory language, Bogetti asserts that his conviction must be vacated because one of the laboratory technicians who analyzed Bogetti's blood sample testified that the alcohol test results were measured in "decaliters," which demonstrated that there were only ten liters of alcohol in Bogetti's system. Thus, Bogetti maintains that such a level is far less than that proscribed by the statute because the State was bound to show at least ten-hundredths (.10) percent of alcohol by weight in grams in one hundred milliliters of his blood. Appellant's brief at 13; Appellants' Reply brief at 5.

Notwithstanding the laboratory technician's purported reference to "decaliter," she acknowledged that the level of alcohol in Bogetti's blood serum was .159 grams in 100 milliliters of blood. R. at 244–45. Additionally, the toxicology report admitted at trial indicated that Bogetti's test results were measured in deciliters. Specifically, the report concluded: "ethyl alcohol . . . 159 . . . mg/dl."[5] R. at 244, 255. The witness also testified that Bogetti's blood alcohol content ranged from .127 percent to .135 percent alcohol by weight in grams in 100 milliliters of blood, thus indicating an amount at least .027 percent above the legal limit as set forth in I.C. § 9–30–5–1. R. at 247.

In light of the evidence demonstrating Bogetti's blood alcohol content, we cannot say that the laboratory technician's purported reference to "decaliter" is fatal to his conviction. Inasmuch as the remainder of her testimony and the toxicology report admitted at trial indicated that the blood alcohol content was measured in "deciliters," Bogetti's suggestion that we should ignore such evidence is simply a request that we reweigh the evidence. This we will not do. Because the evidence most favorable to the verdict demonstrated that Bogetti's blood alcohol level exceeded .10 percent, the conviction may stand.

**4.** This statute was recently amended by our legislature which provides in relevant part as follows:

A person who operates a vehicle with an alcohol concentration equivalent to at least ten-hundredths (.10) gram of alcohol per: (1) one hundred (100) milliliters of the person's blood; or

(2) two hundred ten (210) liters of the person's breath; commits a Class C misdemeanor.

S.E.A. No. 1, 111th G.A., 2d Sess. (Ind.1999).

**5.** The scientific abbreviation for "deciliter" is "dl," whereas the abbreviation for "decaliter" is "dkl." Webster's Third International Dictionary Unabridged 1424 (1986).

## CONCLUSION

In light of our resolution of the issues set forth above, we conclude that Officer Jester properly stopped Bogetti's vehicle after receiving information from a concerned citizen that Bogetti may have been intoxicated. Additionally, we note that the evidence was sufficient to support Bogetti's conviction for operating a motor vehicle with a blood alcohol of .10 percent or more.

Judgment affirmed.

SULLIVAN, J., and STATON, J., concur.