Gregory FRANCIS, Appellant–
Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0108–CR–525.

Court of Appeals of Indiana.

Feb. 20, 2002.

Victoria Ursulskis, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Gregory Francis appeals his conviction for unlawful possession of a firearm by a serious felon, a class B felony.[1] Francis raises one issue, which we revise and restate as whether the trial court abused its discretion by denying Francis's motion to suppress evidence gotten from an investigatory stop. We affirm.

The relevant facts follow. On the evening of December 8, 2000, Officer Robert Donaldson of the Lawrence Police Department was sitting in his patrol car at a gas station. A car pulled up alongside Officer Donaldson's patrol car and a man and woman, who wished not to be identified in any reports of the matter (collectively, the "Informants"), reported to Officer Donaldson that a relative's car had been stolen. The Informants stated that "Gregory Francis" was driving the stolen car and that he had an open arrest warrant issued against him. Transcript at 11. The Informants also told Officer Donaldson that the car was a white, four-door Pontiac, and that the car could be found at Will Estates Trailer Park ("Trailer Park"). After receiving this information, Officer Donaldson called dispatch to confirm whether there were any open arrest warrants pending against a white male named "Gregory Francis." *Id.* at 11–12. Dispatch responded that "Gregory Francis" did have an open warrant, and Officer Donaldson then drove to the Trailer Park. *Id.* at 12.

Immediately upon entering the Trailer Park, Officer Donaldson spotted a white, four-door Pontiac. Officer Donaldson followed the car through the Trailer Park, and the driver eventually pulled the car into a driveway. Officer Donaldson parked his patrol car in front of that driveway and activated his emergency lights. As the driver began to exit the car, Officer Donaldson ordered the driver to return to, and remain in, the car. Officer Donaldson approached the car and asked for the driver's name. The driver identified himself as "Gregory Francis." *Id.* at 15. As he spoke with Francis, Officer Donaldson saw the barrel of a shotgun in the front passenger seat of the Pontiac. When Officer Donaldson removed the gun from the car, he saw that it was loaded. Officer Donaldson also found five shotgun shells in the front passenger seat of the Pontiac.

The State charged Francis with unlawful possession of a firearm by a serious violent felon as a class B felony. After a bench trial, the trial court found Francis guilty as charged. The trial court sentenced Francis to six years at the Indiana Department of Correction.

The sole issue is whether the trial court abused its discretion by denying Francis's motion to suppress evidence gotten from an investigatory stop. The trial court is afforded broad discretion in ruling on the admissibility of evidence, and we will reverse its ruling only upon a showing of abuse of discretion. *Smoote v. State*, 708 N.E.2d 1, 3 (Ind.1999). Additionally, we review the denial of a motion to suppress evidence in a manner similar to allegations of insufficient evidence. *Taylor v. State*, 689 N.E.2d 699, 702 (Ind.1997). We do not reweigh the evidence, and we consider conflicting evidence most favorably to the trial court's ruling. *Id.* However, unlike the typical sufficiency of the evidence case where only the evidence favor-

1. Ind.Code § 35–47–4–5.

able to the judgment is considered, in reviewing a denial of a motion to suppress, we must also consider any uncontested evidence that is favorable to the defendant. *Fair v. State*, 627 N.E.2d 427, 434 (Ind. 1993). Here, Francis claims that the trial court abused its discretion when it denied his motion to suppress because the investigatory stop violated his rights under both the United States and Indiana Constitutions.

### A.

■ The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. CONST. amend. IV. The Fourth Amendment's protection against unreasonable search and seizure has been extended to the states through the Fourteenth Amendment. *See Berry v. State*, 704 N.E.2d 462, 464–65 (Ind.1998). As a general rule, the Fourth Amendment prohibits a warrantless search. *Id.* Consequently, when a search is conducted without a warrant, the State has the burden of proving that the search falls into one of the exceptions to the warrant requirement. *Id.* at 465.

One exception to the warrant requirement was recognized by the United States Supreme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). In *Terry*, the United States Supreme Court established the rule that a police officer may, without a warrant or probable cause, briefly detain a person for investigatory purposes if, based upon specific and articulable facts together with rational inferences from those facts, "official intrusion upon the constitutionally protected interests" of private citizens is reasonably warranted, and the officer has a reasonable

suspicion that criminal activity "may be afoot." *Id.* at 21–22, 30, 88 S.Ct. at 1879–1880, 1884, 20 L.Ed.2d 889.

■ The Supreme Court has stated that "[t]he concept of reasonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citations omitted). Rather, in evaluating the legality of a *Terry* stop, we must consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). Therefore, the reasonable-suspicion inquiry is fact-sensitive and must be determined on a case-by-case basis. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind.1997), *modified on reh'g on other grounds*, 685 N.E.2d 698. The reasonable suspicion requirement is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State*, 735 N.E.2d 1179, 1183–1184 (Ind.Ct.App.2000); *see also Gipson v. State*, 459 N.E.2d 366, 368 (Ind.1984). Thus, reasonable suspicion entails something more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence. *Luster v. State*, 578 N.E.2d 740, 743 (Ind.Ct.App.1991). We review a trial court's determination regarding reasonable suspicion de novo. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind.Ct.App.2000).

■ Francis asserts that the information offered by the Informants did not provide Officer Donaldson with the requisite reasonable suspicion to conduct a valid *Terry* stop and, thus, the trial court should have suppressed the evidence seized as a

result of the stop. We have previous held that anonymous or unidentified informants can supply information that gives police reasonable suspicion.[2] *Bogetti v. State,* 723 N.E.2d 876, 879 (Ind.Ct.App.2000). However, as a general rule, an anonymous tip alone is not likely to constitute the reasonable suspicion necessary for a valid *Terry* stop unless significant aspects of the tip are corroborated by the police. *Alabama v. White,* 496 U.S. 325, 329–30, 110 S.Ct. 2412, 2415–16, 110 L.Ed.2d 301 (1990); *see also Lampkins,* 682 N.E.2d at 1271.

To support his assertion that Officer Donaldson did not have reasonable suspicion to conduct a *Terry* stop of his car, Francis relies upon the recent cases of *Florida v. J.L.,* 529 U.S. 266, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000) and *Washington v. State,* 740 N.E.2d 1241 (Ind.Ct. App.2000), *trans. denied.* In *J.L.,* an anonymous caller reported to the police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun. *J.L.,* 529 U.S. at 268, 120 S.Ct. at 1377. The police responded and found three black males at the bus stop, one wearing a plaid shirt. *Id.* Apart from the tip, the officers had no reason to suspect any of the three of illegal conduct, as they did not see a firearm and J.L. made no threatening or otherwise unusual movements. *Id.* The officers performed a *Terry* frisk on all three males, seizing a gun from J.L. *Id.* The United States Supreme Court stated that:

The reasonableness of official suspicion must be measured by what the officers knew before they conducted their search. All the police had to go on in this case was the bare report of an unknown, unaccountable informant who neither explained how he knew about the gun nor supplied any basis for believing he had inside information about J.L. .... The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person.

*Id.* at 271, 120 S.Ct. at 1379. The Court held that the anonymous tip, which was not suitably corroborated, was insufficient indicia of reliability to provide the police with reasonable suspicion to make the investigatory stop. *Id.* at 271, 120 S.Ct. at 1378.

Similarly, in *Washington,* a citizen called the police to report a possible drunk driver. *Washington,* 740 N.E.2d at 1243. The informant, whose identity and reliability remained unknown, informed police that a black Cadillac with a white top and a specific license plate number was heading southbound on Interstate 65. *Id.* A police officer, who located the Cadillac and verified the license plate number, pulled the car over without personally observing any evidence of drunk or erratic driving. *Id.* We held that the officer did not have reasonable suspicion to stop the car because the anonymous tip was not corroborated by evidence of the informant's reliability or by independent observation of the

**2.** In its Appellee Brief, the State appears to argue that the Informants may not have been anonymous informants. To support this contention, the State suggests that the Informants may have provided Officer Donaldson with their identities and appropriate contact information, but requested to remain anonymous in any official reports. In the alternative, the State asserts that even if the Informants did not supply Officer Donaldson with their names and contact information, Officer Donaldson would still be able to contact the Informants via the owner of the stolen car, who is related to the Informants. However, the Record is devoid of any evidence to support the State's bare contention that the Informants were known to Officer Donaldson. Thus, we find the State's theory to be mere speculation and, thus, we analyze this case as if the Informants were anonymous.

officer. *Id.* at 1246 (citing *J.L.*, 529 U.S. 266, 271–272, 120 S.Ct. 1375, 1379, 146 L.Ed.2d 254 (2000)); *cf. State v. Eichholtz,* 752 N.E.2d 163, 167 (Ind.Ct.App.2001) (holding that reasonable suspicion existed to justify a *Terry* stop of a suspected drunk driver where informant gave police information about his own car, the defendant's car, and their location, all of which the officer was able to confirm when he arrived at the scene).

■ However, the present case is distinguishable from both *J.L.* and *Washington* because Officer Donaldson did not act solely upon the Informant's tip; rather, he confirmed with his dispatch the Informant's information regarding the open arrest warrant against Francis before he drove to the Trailer Park in search of the white, four-door Pontiac. Instead, the present case is analogous to *Lampkins,* wherein our supreme court addressed the stop of a motorist after the police received a tip from an anonymous phone caller reporting a specific location where a drug deal would be conducted, a license plate number, and a description of the vehicle. *Lampkins,* 682 N.E.2d at 1271–1272. In addition, the tip was verified through another confidential informant amidst other random complaints citing open-air drug dealing. *Id.* Our supreme court found the tip reliable because the "anonymous tipster gave very specific information to the officer—that the car was a brown Impala with a specific license plate number and was in a specific location—and the officer verified that this information was correct when he went to the general area described by the tipster." *Id.* at 1271.

Here, Officer Donaldson received a tip from the Informants, in person, informing him that Francis was presently driving a stolen car. The Informants gave Officer Donaldson a detailed description of the car, i.e., a white, four-door Pontiac, and told him that the car may be located at the Trailer Park. Further, the Informants notified Officer Donaldson that Francis had an open arrest warrant issued against him. Next, Officer Donaldson confirmed with his dispatch that Francis had an open arrest warrant against him, thus corroborating part of the information given to him by the Informants. When Officer Donaldson drove to the Trailer Park, he found a car matching the description given by the Informants. The information supplied by the Informants, corroborated by the independent confirmation of the open arrest warrant, gave Officer Donaldson reasonable suspicion to believe that the driver of the white, four-door Pontiac was Gregory Francis. *See, e.g., Id.* at 1272. Accordingly, Officer Donaldson's investigatory stop of Francis's car was valid under a *Terry* analysis and did not violate Francis's Fourth Amendment rights. *See, e.g., Bogetti,* 723 N.E.2d at 879 (holding that anonymous or unidentified informants can supply information that gives police reasonable suspicion and a tip will be deemed reliable when an individual provides specific information to police officers such as a vehicle description).

### B.

■ Francis also argues that the investigatory stop violated his rights under Article I, Section 11, of the Indiana Constitution. However, Francis fails to provide an independent argument for this state constitutional claim. Rather, he contends that the Indiana Constitution's "protections relating to investigative stops [are] consistent with federal Fourth Amendment constitutional analyses." Appellant's Brief at 11. We note that Indiana courts "interpret and apply Section 11 independently from federal Fourth Amendment jurisprudence." *Mitchell v. State,* 745 N.E.2d 775, 786 (Ind.2001). Thus, the appropriate

analysis for the legality of investigatory stops under the Indiana Constitution is "whether the police behavior was reasonable." *Id.* (citations omitted). Nevertheless, because Francis failed to provide us with an analysis of his Indiana constitutional claim separate from the federal analysis, he has waived any claim of error. *See South Bend Tribune v. Elkhart Circuit Court,* 691 N.E.2d 200, 202 n. 6 (Ind. Ct.App.1998) (holding claims under Article I, Section 9, of the Indiana Constitution waived for failure to make any separate argument), *trans. denied.* Accordingly, the trial court did not abuse its discretion by denying Francis's motion to suppress.

For the foregoing reasons, we affirm Francis's conviction for unlawful possession of a firearm by a serious felon as a class B felony.

Affirmed.

DARDEN, J. and BAILEY, J., CONCUR.