

FILED
Sep 12 2013, 5:57 am

CLERK
of the supreme court,
court of appeals and
tax court

**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**NICHOLAS T. OTIS**
Newby Lewis Kaminski & Jones, LLP
LaPorte, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CHANDRA K. HEIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| BRIAN RUSSELL, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 46A03-1212-CR-544 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAPORTE SUPERIOR COURT
The Honorable Jennifer L. Koethe, Judge
Cause No. 46D03-1008-CM-901

**September 12, 2013**

**OPINION - FOR PUBLICATION**

**BRADFORD, Judge**

Appellant-Defendant Brian Russell appeals his conviction for Class C misdemeanor operating a vehicle while intoxicated. LaPorte County Sherriff's Deputy Andrew Hahn subjected Russell to an investigatory stop after concerned citizen Wayne Bogart called 911 to report Russell as a possible intoxicated driver. At trial, Appellee-Plaintiff the State of Indiana presented evidence obtained as a result of the stop, which the trial court admitted over Russell's motion to suppress. Because Bogart provided police with specific information regarding where, when, and how Russell could be identified, and because Deputy Hahn corroborated this information with his own observations, we conclude that Bogart's tip was sufficiently reliable to support reasonable suspicion under the Fourth Amendment. Under Article I, Section 11, we conclude that Deputy Hahn had reasonable suspicion to stop Russell because Bogart provided police with a reliable tip, Deputy Hahn's request for Russell's driver's license and registration was minimally intrusive, and the need to remove intoxicated drivers from the road warranted an immediate police response. The judgment of the trial court is affirmed.

## FACTS AND PROCEDURAL HISTORY

At approximately 2:00 a.m. on August 8, 2010, Bogart was driving on Highway 421, traveling from Valparaiso to his home in North Judson. Another driver, later identified as Russell, closed in on Bogart's vehicle from the rear and flashed his vehicle's headlights on and off. Thinking there was a problem, Bogart pulled over. Russell pulled his vehicle alongside Bogart's, and both men rolled down their windows. Russell indicated to Bogart that he was lost and needed directions to State Road 30. Bogart noticed that Russell's speech

was slurred, and Russell admitted that he had been drinking alcohol. Bogart informed Russell that State Road 30 was sixteen miles in the opposite direction. Russell replied that "he would never be able to find [it]" and began to cry. Tr. p. 34. Russell begged Bogart to show him the way; Bogart eventually agreed.

Bogart set off for State Road 30, and Russell followed. While en route, Bogart called 911 on his cell phone. Bogart told the 911 operator that he believed Russell was intoxicated and asked that an officer meet him and Russell at the Speedway gas station near the intersection of Highway 421 and State Road 30. In response, Deputy Andrew Hahn was dispatched to the gas station. When Deputy Hahn arrived, he observed no vehicles in the gas station parking lot, prompting him to call the dispatcher to obtain more information. The dispatcher, who had just spoken with Bogart, informed Deputy Hahn that Bogart was nearing the gas station and that, when he arrived, Russell would be driving the trailing vehicle. Moments later, Deputy Hahn observed two vehicles pull into to the gas station parking lot, one trailing the other. The drivers of these vehicles were later identified as Bogart and Russell.

Bogart and Russell stopped at the gas pumps, and Bogart positioned his vehicle so as to block Russell from leaving. Bogart exited his vehicle, pointed to Deputy Hahn and then, at Russell. Russell then exited his vehicle. Deputy Hahn believed an altercation was about to take place and pulled his vehicle behind Russell's. At that point, Russell re-entered his vehicle and began to drive away. Deputy Hahn ordered Russell to stop. He then activated his vehicle's emergency lights and pursued Russell, stopping him before he exited the gas

3

station parking lot.

Deputy Hahn asked Russell for his driver's license and registration. During this exchange, Deputy Hahn observed that Russell's speech was slurred, he had blood shot eyes, and his manual dexterity was poor. Deputy Hahn also identified the smell of alcohol emanating from the interior of Russell's vehicle. At that point, Deputy Hahn asked Russell to exit his vehicle. As Russell exited, Deputy Hahn observed that Russell's balance was poor and that he was swaying from side to side. Russell eventually admitted to Deputy Hahn that he had been drinking alcohol. Deputy Hahn then asked Russell to perform three field sobriety tests, all of which Russell failed. Deputy Hahn arrested Russell and transported him to LaPorte County Jail.

Russell was charged with Class C misdemeanor operating a vehicle while intoxicated. On December 21, 2010, Russell filed a motion to suppress "all evidence seized by the arresting officers, all observations made by the arresting officers, and all statements made by Mr. Russell as a result of the unconstitutional conduct of the police." Appellant's App. p. 13. Following a hearing on the issue, the trial court denied Russell's motion. On October 24, 2012, Russell's case proceeded to trial, during which the State presented evidence obtained as a result of Deputy Hahn's investigatory stop. The jury found Russell guilty as charged. On November 28, 2012, the trial court sentenced Russell to sixty days in the LaPorte County Jail with sixty days suspended to probation. As a condition of probation, Russell was ordered to complete an alcohol treatment program. His driver's license was also suspended for one year.

4

**DISCUSSION AND DECISION**

Russell argues that the trial court abused its discretion in admitting evidence obtained as a result of Deputy Hahn's investigatory stop. Specifically, Russell claims that Deputy Hahn lacked reasonable suspicion to initiate the stop as required under both the Fourth Amendment to the United State Constitution and Article I, Section 11 of the Indiana Constitution. Although we generally review a trial court's decision to admit evidence despite a motion to suppress under an abuse-of-discretion standard, the ultimate determination of whether an officer had reasonable suspicion to conduct an investigatory stop is reviewed *de novo*. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind. Ct. App. 2000).

As a preliminary matter, the State contends that Russell waived his federal claim by failing to provide an independent analysis under the Fourth Amendment. We agree. Although nearly identical in wording, the Fourth Amendment to the United States Constitution and Article I, Section 11 of the Indiana Constitution are independently interpreted and applied. *Baniaga v. State*, 891 N.E.2d 615, 618 (Ind. Ct. App. 2008). An appellant's failure to provide us with a separate analysis for each constitutional claim constitutes waiver. *Francis v. State*, 764 N.E.2d 641, 647 (Ind. Ct. App. 2002) (citing *South Bend Tribune v. Elkhart Circuit Court*, 691 N.E.2d 200, 202 n.6 (Ind. Ct. App. 1998)). Nevertheless, we will address Russell's Fourth Amendment claim.

## I. Fourth Amendment

Russell claims that Deputy Hahn's investigatory stop violated his Fourth Amendment right to be free from unreasonable searches and seizures by the government. U.S. CONST.

amend IV. "Because a traffic stop is a seizure under the Fourth Amendment, police may not initiate a stop for any conceivable reason, but must possess at least reasonable suspicion that criminal activity is taking place." *Meredith v. State*, 906 N.E.2d 867, 869 (Ind. 2009).

> Reasonable suspicion exists where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising therefrom, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. In deciding whether there was reasonable suspicion for a stop, we look to the totality of the circumstances.

*Burkes v. State*, 842 N.E.2d 426, 429-30 (Ind. Ct. App. 2006).

At trial, Deputy Hahn testified that he stopped Russell because of Bogart's 911 call reporting a possible intoxicated driver. It is well-established in Indiana that a tip from a concerned citizen may justify an investigatory stop if sufficiently reliable. *State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011). The reliability of a concerned citizen tip "generally must be established by reference to underlying facts and circumstances which indicate that the information is trustworthy." *Renzulli*, 958 N.E.2d at 1147. The tipster's susceptibility to prosecution for false reporting heightens the likelihood of the report's reliability and is a circumstance bearing on the reasonableness of suspicion. *Kellems v. State*, 842 N.E.2d 352, 355-56 (Ind. 2006), *rev'd on other grounds*.

Here, the tip received by the 911 operator and relayed to Deputy Hahn included specific information regarding where the suspect would be, when he would be there, and how he could be identified. Bogart asked that police meet him and Russell at the Speedway gas station near the intersection of Highway 421 and State Road 30. Bogart later informed police that he was nearing the gas station and that, when he arrived, Russell would be driving the

6

trailing vehicle. This information was corroborated when, moments later, Deputy Hahn observed two vehicles pull into the gas station parking lot, one trailing the other. Notably, these events occurred at the low-traffic time of approximately 2:00 a.m. Deputy Hahn also observed Bogart position his vehicle so as to block Russell from leaving the parking lot, and Bogart pointed out Russell to Deputy Hahn. Furthermore, Bogart agreed to meet police at the gas station, rendering him susceptible to prosecution for false reporting. Under these circumstances, we conclude that Bogart's tip demonstrated sufficient reliability to give rise to reasonable suspicion to support an investigatory stop under the Fourth Amendment.

## II. Article I, Section 11

Russell also claims that Deputy Hahn's investigatory stop violated his Article I, Section 11 right to be free from unreasonable searches and seizures. IND. CONST. art. I, § 11. Under the Indiana Constitution, the legality of a government search turns on an evaluation of the reasonableness of the police conduct under the totality of the circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). Although other relevant considerations under the circumstances may exist, the Indiana Supreme Court has determined that the reasonableness of a search or seizure turns on a balance of: 1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of the search or seizure imposes on the citizens' ordinary activities, and 3) the extent of law enforcement needs. *Id.* at 361.

For the reasons stated in our analysis of Russell's Fourth Amendment claim, we conclude that the degree of Deputy Hahn's suspicion was reasonably high. He received a

7

concerned citizen tip about a possible intoxicated driver, which, based on corroboration, was sufficiently reliable. In contrast, the degree of intrusion on Russell's privacy was minimal. Deputy Hahn merely asked Russell for his license and registration before additional observations—i.e., Russell's slurred speech and the smell of alcohol—gave rise to further suspicion and corresponding intrusion. *State v. Washington*, 898 N.E.2d 1200, 1211 (Ind. 2008) ("In a stop based on either probable cause or reasonable suspicion, it is clear that an officer may request the driver's license and registration…."). Moreover, the stop was justified by the needs of law enforcement. A suspected intoxicated driver warrants an immediate police response for the safety of the general public, as well as for the safety of the driver. *Renzulli*, 958 N.E.2d at 1148. In light of the totality of the circumstances, we conclude that Deputy Hahn had reasonable suspicion to support his investigatory stop under Article I, Section 11.

Russell's only contention on appeal is that Deputy Hahn lacked reasonable suspicion to initiate the stop because Bogart did not report, and Deputy Hahn did not observe, any additional criminal activity such as erratic driving. Russell relies on the Indiana Supreme Court's decision in *Renzulli*, where, in concluding that a tipster's 911 call reporting a possible intoxicated driver gave rise to reasonable suspicion for an investigatory stop, the court noted that the tipster "also described the criminal activity observed, 'he is all over the road he is going to kill somebody[.]'" *Renzulli*, 958 N.E.2d at 1149. This contention, however, is without merit. Despite the language asserted by Russell, *Renzulli* does not stand for the proposition that a tipster must report additional criminal activity in order for his or her

8

report of a possible intoxicated driver to be deemed reliable. *See Bogetti v. State*, 723 N.E.2d 876, 878 (Ind. Ct. App. 2000) (finding reasonable suspicion of intoxicated driving where anonymous tipster reported only that individual "may be intoxicated"); *see also Renzulli*, 958 N.E.2d at 1148 (discussing *Bogetti* with approval).

Because Russell's rights under the Fourth Amendment and Article I, Section 11 were not violated, the trial court acted within its discretion in admitting evidence obtained as a result of Deputy Hahn's investigatory stop of Russell's vehicle.

The judgment of the trial court is affirmed.

MAY, J., concurs.

BAILEY, J., concurs in result with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

BRIAN RUSSELL,                          )
                                        )
    Appellant-Defendant,         )
                                        )
        vs.          )    No.  46A03-1212-CR-544
                                        )
STATE OF INDIANA,                       )
                                        )
    Appellee-Plaintiff.          )

**BAILEY, Judge, concurring in result**

I concur with the result of the majority; however, given Russell's waiver of a Fourth Amendment challenge to the stop leading to his arrest, I write separately because I do not think that this Court should address the merits of that issue.

Failure to provide separate analysis of Indiana and United States constitutional claims under Article 1, Section 11 and the Fourth Amendment, respectively, results in waiver. Francis v. State, 764 N.E.2d 641, 647 (Ind. Ct. App. 2002). This is because, though similar in wording, we interpret and apply the two provisions independently from one another. Id. at 646-47. Thus, in Francis, we held as waived an Indiana constitutional challenge to an investigatory stop where the defendant argued that "the Indiana Constitution's 'protections

relating to investigative stops [are] consistent with federal Fourth Amendment constitutional analysis.'" Id. at 646 (citations omitted).

Here, Russell's brief mentions the applicability of the Fourth Amendment to the United States Constitution, but it provides no separate analysis. And while his brief mentions the Fourth Amendment and cites cases that discuss the Fourth Amendment, he does not recognize the distinctions in analysis between Fourth Amendment claims and claims under Article I, Section 11 of the Indiana Constitution. His arguments offer analysis only on the latter of these, addressing most directly the Indiana constitutional analysis set out in State v. Renzulli, 958 N.E.2d 1143 (Ind. 2011).

The majority rightly concludes that Russell has waived any argument under the Fourth Amendment to the U.S. Constitution, but then performs that analysis itself, waiver notwithstanding.

Under these circumstances, I would conclude that Russell's Fourth Amendment contention is waived without moving on to address the issue further. This is particularly so because, in the final analysis, Russell's argument boils down to a request for us to reweigh the evidence leading to the trial court's conclusion that the police had reasonable suspicion to stop him. Thus, neither Russell's Federal nor Indiana constitutional analysis would prevail, and this obviates the need to discuss the merits of an unargued constitutional issue.

I therefore respectfully concur in result with this separate opinion.