## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Sep 30 2015, 8:31 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

---

ATTORNEY FOR APPELLANT

Gary L. Griner
Mishawaka, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Katherine Modesitt Cooper
Deputy Attorney General
Indianapolis, Indiana

---

## IN THE
# COURT OF APPEALS OF INDIANA

---

James H. Gosnell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

September 30, 2015

Court of Appeals Case No.
71A03-1502-CR-47

Appeal from the St. Joseph
Superior Court

The Honorable Elizabeth Hurley,
Judge

Trial Court Cause No.
71D08-1207-FD-615

**Vaidik, Chief Judge.**

# Case Summary

[1] James H. Gosnell was convicted of Class D felony operating a motor vehicle while privileges are suspended as a habitual violator of traffic laws (HTV) and Class D felony operating a vehicle with a blood-alcohol concentration of at least .08 with a prior operating while intoxicated (OWI) conviction within the preceding five years. He now appeals both convictions, arguing that the officer did not have reasonable suspicion to stop him under the Fourth Amendment of the United States Constitution or Article 1, Section 11 of the Indiana Constitution. Finding that the officer had reasonable suspicion to conduct an investigatory stop based on the concerned-citizen tip, and the circumstances—an area with a history of burglaries and thefts, and the time of day—we affirm.

# Facts and Procedural History

[2] There is a Save-A-Lot grocery store on the corner of Twelfth Street and Byrkit Avenue in Mishawaka, Indiana. Directly across from Save-A-Lot is a 7-Eleven gas station that has been the target of armed robbers and shoplifters. Behind Save-A-Lot, there is a loading dock. Village Green, a mobile-home community that has reported "quite a few burglaries," is located behind the loading dock, across a small grass field. Tr. p. 33.

[3] Julie Williams lives in Village Green. Around 12:30 a.m. on July 6, 2012, she was on her way home from work, driving her truck on Byrkit Avenue. As she drove by Save-A-Lot, she noticed a small, black car parked behind the loading

dock and she saw the dome lights in the car flash on and off multiple times as the doors were opened and closed. Williams became concerned about the car and its occupants because there had been "break-ins in Village Green." *Id.* at 13. Because it was dark, the store was closed, and there was no obvious reason for a car to be parked at the loading dock, Williams called the police and pulled her truck closer to the grass field to continue watching the car until an officer arrived. While she was waiting, the car started to leave the parking lot. Williams called the police again and then followed the car in her truck. *Id.* at 14.

[4] The car was traveling west on Twelfth Street with Williams following in her truck when Mishawaka Police Department Officer Bruce Faltynski spotted it. He was heading east on Twelfth Street at the time. Officer Faltynski turned his car around and fell in line behind Williams's truck. When the small, black car turned into a parking lot, Williams drove on and Officer Faltynski confirmed that the license plate on the car matched the plate number from the dispatcher. *Id.* at 20. He then stopped the car to investigate.

[5] Gosnell was driving the small, black car with his wife in the passenger seat and two minor children in back. The car was in working order and Officer Faltynski did not see Gosnell violate any traffic rules. *Id.* at 30. But when Officer Faltynski asked for Gosnell's identification, he discovered that Gosnell did not have a license because he was an HTV. Officer Faltynski asked Gosnell to step out of the car and, while he was talking with Gosnell about his license,

he smelled alcohol on Gosnell's breath. Gosnell admitted to Officer Faltynski that he had consumed four beers that night.

[6] The State charged Gosnell with Class D felony operating a motor vehicle while privileges are suspended as an HTV, Class C misdemeanor operating a vehicle with a blood-alcohol concentration of at least .08, and Class D felony operating a vehicle with a blood-alcohol concentration of at least .08 with a prior OWI conviction within the preceding five years. Appellant's App. p. 7-9.

[7] Gosnell moved to suppress the evidence of his license status and blood-alcohol concentration, claiming Officer Faltynski did not have reasonable suspicion of criminal activity when he stopped him. The trial court denied Gosnell's motion to suppress and admitted the evidence during trial. A jury found him guilty of Class D felony operating a motor vehicle while privileges are suspended as an HTV and Class C misdemeanor operating a vehicle with a blood-alcohol concentration of at least .08, and he pled guilty to Class D felony operating a vehicle with a blood-alcohol concentration of at least .08 with a prior OWI conviction within the preceding five years. The court merged the Class C misdemeanor for operating a vehicle with a blood-alcohol concentration of at least .08 with the Class D felony conviction for operating a vehicle with a blood-alcohol concentration of at least .08 with a prior OWI conviction within the preceding five years, and sentenced him to concurrent terms of two-and-one-half years.

[8] Gosnell now appeals.

# Discussion and Decision

[9] Gosnell contends that the trial court erred by admitting evidence resulting from the *Terry* stop—specifically, evidence that he was driving with a suspended license, and that his blood-alcohol concentration was over the legal limit. He argues that Officer Faltynski lacked reasonable suspicion to stop him and, therefore, "all evidence obtained following the stop should be suppressed." Appellant's Br. p. 4. He raises this issue under both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.

[10] A trial court's determination of admissibility of evidence is reviewed for abuse of discretion and will be reversed only where the decision is clearly against the logic and effect of the facts and circumstances. *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001). We will not reweigh the evidence, and we consider any conflicting evidence in favor of the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. However, we must also consider the uncontested evidence favorable to the defendant. *Id.*

# I. Fourth Amendment

[11] The Fourth Amendment protects people from unreasonable searches and seizures, and this protection has been extended to state action through the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). These two constitutional provisions have generally been construed to prohibit warrantless

searches except in particular circumstances. *Berry v. State*, 704 N.E.2d 462, 465 (Ind. 1998). And "when a search is conducted without a warrant, the State has the burden of proving that an exception to the warrant requirement existed at the time of the search." *Id.*

[12] One such exception to the warrant requirement is the *Terry* stop. Police officers may briefly detain a person for investigatory purposes if they have reasonable suspicion that criminal activity may be afoot. *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). In evaluating the legality of a *Terry* stop, we consider "the totality of the circumstances—the whole picture." *United States v. Cortez*, 449 U.S. 411, 417 (1981). The reasonable-suspicion requirement is satisfied where the facts known to the officer at the moment of the stop, together with the reasonable inferences arising from such facts, would cause an ordinarily prudent person to believe that criminal activity has occurred or is about to occur. *Lyons v. State*, 735 N.E.2d 1179, 1183-84 (Ind. Ct. App. 2000), *trans. denied*; *see also Gipson v. State*, 459 N.E.2d 366, 368 (Ind. 1984). "Reasonable suspicion" requires something "more than an inchoate and unparticularized suspicion or hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Francis v. State*, 764 N.E.2d 641, 644 (Ind. Ct. App. 2002) (citing *Luster v. State*, 578 N.E.2d 740, 743 (Ind. Ct. App. 1991)).

[13] Gosnell argues that Officer Faltynski did not have reasonable suspicion to stop him because neither the officer nor the tipster, Williams, saw anything illegal, or anything that would unambiguously suggest criminal activity was afoot. Appellant's Br. p. 6-7. But whether the officer or the tipster saw unambiguously

criminal activity is not the correct question. "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams v. Williams*, 407 U.S. 143, 145 (1972). Therefore, the fact that an action might also have an innocent explanation does not establish a violation of the Fourth Amendment. *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). The conduct in *Terry*, for example, was "ambiguous and susceptible of an innocent explanation," but *Terry* recognized that, "officers could detain the individuals to resolve the ambiguity." *Id.* The correct question is whether Officer Faltynski's "brief stop of [Gosnell], in order to determine his identity or to maintain the status quo momentarily while obtaining more information," was "reasonable in light of the facts known to the officer at the time." *See id.* at 146.

[14]  Examining the facts that were available to Officer Faltynski in this case, the trial court found he had reasonable suspicion that criminal activity was afoot. Officer Faltynski discussed three reasons why he stopped Gosnell: (1) Williams's tip that described unusual, but not illegal, activity behind Save-A-Lot; (2) Save-A-Lot is positioned between a 7-Eleven, where there have been "some armed robberies" and thefts, and the Village Green neighborhood, which has reported "quite a few burglaries"; and (3) it was 12:30 in the morning, the store was closed, and there was no apparent reason for people to be getting in and out of a car multiple times behind the loading dock. Tr. p. 32-33.

First, as for Williams's tip, "it is well-established in Indiana that a tip from a concerned citizen may justify an investigatory stop if sufficiently reliable." *Russell v. State*, 993 N.E.2d 1176, 1180 (Ind. Ct. App. 2013). "The reliability of a concerned citizen tip 'generally must be established by reference to underlying facts and circumstances which indicate that the information is trustworthy.'" *Id.* (quoting *State v. Renzulli*, 958 N.E.2d 1143, 1147 (Ind. 2011)). Tips from concerned citizens "will be deemed reliable when an individual provides specific information to police officers such as a vehicle description." *Renzulli*, 958 N.E.2d at 1148 (quoting *Bogetti v. State*, 723 N.E.2d 876, 879 (Ind. Ct. App. 2000)).

The record reflects multiple indicators that Williams's tip was sufficiently reliable to justify an investigatory stop. She provided a description of the small, black car, which included its license-plate number. Tr. p. 20. She called the police a second time, when the car began to leave Save-A-Lot, and followed it herself, providing the police with specific information about the car's location and direction of travel. *Id.* at 15; *see also Russell*, 993 N.E.2d at 1180 (finding a tip sufficiently reliable when it was given by a driver who was leading the suspicious vehicle to a specific location; during a low-traffic time of day; when the tip included particular information about where the suspect was and how to identify him; and because the tipster was also present at the scene, rendering him susceptible to prosecution for false reporting). Finally, it is reasonable to infer that Williams gave her name when she called the police because the State was able to call her as a witness. *See Renzulli*, 958 N.E.2d at 1150 (including the

fact that the tipster identified himself as a factor in the totality-of-the-circumstances test for reasonable suspicion).  Under these circumstances, we find that Williams's tip "provided independent indicia of reliability" sufficient to permit Officer Faltynski to rely on it in forming his own reasonable suspicion for a *Terry* stop.  *See Russell*, 993 N.E.2d at 1180.

[17]   Second, Officer Faltynski testified that he knew of "some armed robberies" and burglaries occurring in the area around Save-A-Lot, even though the store itself had not previously been burglarized.  Tr. p. 33.  Gosnell cites *Wardlow* for the proposition that, standing alone, the nature of the neighborhood does not justify an investigatory stop.  Appellant's Br. p. 7.  But it is a relevant consideration that may be taken together with the other facts.  *Wardlow* goes on to say that "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation."  *Wardlow*, 528 U.S. at 124.  The fact that the stop occurred in a high-crime area, while not dispositive, is among the relevant contextual considerations in a *Terry* analysis.  *Id.*

[18]   Finally, it was 12:30 in the morning.  The store was closed and dark.  The lack of an obvious reason for a car to be at the loading dock at that hour with its doors being opened and closed is what prompted Williams to call the police. She was concerned that the occupants of the small, black car had broken into the store.  *Id.* at 14.

[19] Considering all the facts together—the indicia of reliability in Williams's tip, the history of crimes in the area, and the time of night—we conclude that Officer Faltynski had reasonable suspicion of criminal activity based on articulable facts to support the stop. Therefore, the trial court did not abuse its discretion in admitting evidence obtained from the stop under the Fourth Amendment.

# II. Article 1, Section 11

[20] Gosnell also argues that the initial stop by Officer Faltynski violated Article 1, Section 11 of the Indiana Constitution. Article 1, Section 11 is identical to the Fourth Amendment, but it is analyzed differently. Indiana constitutional analysis focuses on the reasonableness of police conduct under the totality of circumstances. *Litchfield v. State*, 824 N.E.2d 356, 359 (Ind. 2005). We determine reasonableness under the Indiana Constitution by balancing "1) the degree of concern, suspicion, or knowledge that a violation has occurred, 2) the degree of intrusion the method of search or seizure imposes on the citizen's ordinary activities, and 3) the extent of law enforcement needs." *Id.* at 361. The State has the burden of proving that the search was reasonable under the totality of the circumstances. *State v. Bulington*, 802 N.E.2d 435, 438 (Ind. 2004).

[21] Stopping Gosnell was reasonable under the Indiana Constitution. The degree of concern or suspicion that a violation occurred was high in this case: a concerned citizen complained of suspicious activity behind a closed grocery

store, just after midnight, in a neighborhood where there had been "some armed robberies" and "quite a few burglaries." Tr. p. 33. Second, the degree of intrusion was slight. Officer Faltynski stopped Gosnell, briefly, to ask for his identification. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *McDermott v. State*, 877 N.E.2d 467, 473 (Ind. Ct. App. 2007) (citation omitted) (applying this reasoning to the Indiana constitutional analysis), *trans. denied*.

[22] Finally, there is a legitimate need for law enforcement to investigate citizens' complaints of suspicious activity. Officer Faltynski was investigating Williams's concern. In fact, Williams followed the suspect herself because she was so concerned about the possibility that something illegal had happened. "[T]he circumstances warranting an immediate response are readily apparent here." *Bogetti*, 723 N.E.2d at 879.

[23] Balancing the high degree of concern, suspicion, or knowledge that a violation occurred and the needs of law enforcement against the low degree of intrusion, we conclude that Officer Faltynski had reasonable suspicion under Article 1, Section 11 to justify stopping Gosnell. Therefore, the trial court did not abuse its discretion in admitting evidence obtained from the stop under Article 1, Section 11 of the Indiana Constitution.

[24] Affirmed.

Robb, J., and Pyle, J., concur.